# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

THOMAS SCOTT JENKINS,

    *Appellant,*

vs.

IBD, INC.,

    *Appellee.*

Case No. 11-CV-2667-EFM

## MEMORANDUM AND ORDER

In this bankruptcy appeal, appellant and adversary defendant Thomas Scott Jenkins ("Jenkins") seeks review of the bankruptcy court's order denying his motion for summary judgment and granting summary judgment to appellee and adversary plaintiff, IBD, Inc. ("IBD"). For the reasons set forth below, the bankruptcy court's order is reversed and the matter is remanded to the bankruptcy court for determination of issues described herein.

# I. Factual and Procedural Background[1]

## A. Jenkins' Departure from IBD

IBD is a Kansas corporation that provides customized software and computer programming services, primarily to clients in the agricultural industry. Jenkins formerly served as the company's chief executive officer and sat on IBD's board of directors. In its early operations, IBD expended significant resources to develop its central software product known as Agrifusion. This Agrifusion software enabled IBD to enter into contracts with approximately forty customers.

In April 2001, IBD began to experience financial difficulties. As IBD's chief executive officer, Jenkins was charged with finding new investors or purchasers of IBD assets to pay the company's debts. Jenkins traveled around the country to attend investment conferences but ultimately failed to secure a purchaser for IBD. When efforts to find investors and purchasers failed, Jenkins and other IBD employees began to discuss forming a new company called Enterprise Business Solutions, LLC ("EBS"), which would retain IBD's customers. On September 28, 2001, Jenkins resigned as IBD's chief executive officer. At this time, Jenkins did not disclose his plans to form a new company to IBD's remaining board member.

In October 2001, Jenkins directed former IBD employees to copy IBD's servers and to transfer the information to EBS's servers. Jenkins then directed that IBD's servers be wiped to ensure that no software products remained with IBD. EBS did not pay IBD for its software. Shortly thereafter, EBS informed IBD customers that they were obligated to complete the balance of their contracts with EBS or pay an early termination fee. Some of IBD's customers

---

[1] In accordance with the procedures for summary judgment, the facts set forth herein are uncontroverted for the purposes of the present motions before the Court. If controverted, the facts are related in the light most favorable to the party opposing summary judgment.

decided to terminate their contract and paid the termination fee to EBS. EBS continued to serve most of the customers previously served by Plaintiff. EBS represented to IBD's customers that it was the same company as IBD operating under a new name. However, EBS told IBD's creditors that it was a different company that did not assume or pay any of IBD's debts or obligations.

**B.      State-Court Trial and Appeal**

On June 17, 2004, IBD filed an action against both Jenkins and EBS in the District Court for Johnson County, Kansas, alleging conversion of its software, intellectual property, customer lists, customer contacts, goodwill, domain name, and telephone number. IBD also asserted a claim against Jenkins alleging breach of fiduciary duty as officer and director of IBD. Following a trial in January 2006, a jury found Jenkins and EBS liable for conversion and awarded IBD $508,288.00 in damages. The jury also found Jenkins liable for breach of fiduciary duty and awarded IBD $400,000.00 in damages. Finally, the jury found punitive damages appropriate, and at an evidentiary hearing on April 12, 2006, the trial court awarded IBD punitive damages in the amount of $162,623.00.

Jenkins appealed, arguing that the trial court's jury instructions failed to adequately apprise the jury of controlling Kansas law and that the trial court permitted an improper damage award. The Kansas Court of Appeals ultimately affirmed the trial court's judgments and damage awards.[2] Since that time, Jenkins paid IBD approximately $415,086.02 in partial satisfaction of the judgments.

**C.    Bankruptcy Proceedings**

On June 21, 2010, Jenkins filed for Chapter 7 bankruptcy protection. At the time of bankruptcy filing, Jenkins owed IBD approximately $575,000.00. IBD filed an adversary

---

[2] *IBD, Inc. v. Enter. Bus. Solutions, LLC*, 2009 WL 929072, *15 (Kan. Ct. App. 2009).

complaint in the bankruptcy proceeding, seeking a determination that Jenkins's judgments were non-dischargeable. IBD filed a motion for summary judgment, arguing that 11 U.S.C. § 523(a)(4) and (a)(6) precluded discharge of Jenkins's indebtedness to IBD. Jenkins contested IBD's motion and filed his own cross-motion for partial summary judgment, arguing that 11 U.S.C § 523(a)(4) does not preclude discharge because no express or technical trust existed between Jenkins and IBD. On November 21, 2011, the bankruptcy court issued its Memorandum Opinion and Order ("Bankruptcy Order") (Doc. 1-1), granting IBD's motion for summary judgment and denying Jenkins's motion.

## II. Standards

### A. Review of Bankruptcy Court Orders

In reviewing a bankruptcy court's decision, this Court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling.[3] "Legal decisions of the bankruptcy court are reviewed de novo and factual findings are reviewed for clear error."[4] "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, the court is left with the definite and firm conviction that a mistake has been made."[5] If the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, the district court may not reverse it even though it may

---

[3] 28 U.S.C. § 158(a); Fed. R. Bankr. P. 8013.

[4] *Id.*

[5] *In re Yellow Cab Co-op. Ass'n*, 132 F.3d 591, 597 (10th Cir. 1997) (quoting *In re Peterson Distrib., Inc.*, 82 F.3d 956, 959 (10th Cir.1996)).

have weighed the evidence differently.[6] "Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous."[7]

**B. Summary Judgment**

Pursuant to Federal Rule of Bankruptcy Procedure 7056, Federal Rule of Civil Procedure 56 governs summary judgment in adversary proceedings.[8] The summary judgment standard in bankruptcy court is therefore identical to the familiar summary judgment standard in the district court.[9] Summary judgment is appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[10] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[11] A fact is "material" when "it is essential to the proper disposition of the claim."[12] The Court views the evidence and all reasonable inferences in the light most favorable to the party opposing the motion for summary judgment under consideration.[13]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[14] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an

---

[6] *In re Blinder, Robinson & Co.*, 124 F.3d 1238, 1241 (10th Cir.1997).

[7] *In re Farmers Coop. Ass'n*, 2006 WL 950189, *3 (D. Kan. April 7, 2006).

[8] Fed. R. Bankr. P. 7056.

[9] *In re Slamans*, 69 F.3d 468, 476 (10th Cir. 1995).

[10] Fed. R. Civ. P. 56(a).

[11] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[12] *Id.*

[13] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[14] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

essential element of the nonmoving party's claim.[15] If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[16] The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[17] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[18] Conclusory allegations alone are insufficient to defeat a properly supported motion for summary judgment.[19] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[20]

Though the parties in this case filed cross-motions for summary judgment, the legal standard remains the same.[21] Each party retains the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law.[22] Each motion will be considered separately.[23] "To the extent the cross-motions overlap, however, the court may address the legal arguments together."[24] Finally, summary judgment is not a "disfavored

---

[15] *Id.*

[16] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[17] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[18] *Adler*, 144 F.3d at 671.

[19] *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[20] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[21] *City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008).

[22] *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F. Supp. 1375, 1381-82 (D. Kan. 1997) (citing *Houghton v. Foremost Fin. Servs. Corp.*, 724 F.2d 112, 114 (10th Cir.1983)).

[23] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[24] *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010).

procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[25]

### III. Analysis

Exceptions to discharge under 11 U.S.C. § 523 are narrowly construed with deference given to the fresh-start policy that underlies the Bankruptcy Code.[26] As the party opposing Jenkins's discharge, IBD carries the burden of proving the applicability of a discharge exception by a preponderance of the evidence.[27]

**A. IBD Has Failed to Establish "Fiduciary Capacity" Under 11 U.S.C. § 523(a)(4)**

    **1. "Fiduciary Capacity" Requires an Express or Technical Trust**

Jenkins argues that the bankruptcy court erred as a matter of law when it ruled that IBD's judgment for breach of fiduciary duty is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). Section 523(a)(4) excepts from discharge "any debt . . . for fraud or defalcation while acting in a fiduciary capacity . . . ."[28] "Although the question of fiduciary status under this provision is one of federal law, state law is an important factor in determining when a trust relationship exists."[29] Kansas law clearly imposes a general fiduciary duty upon corporate directors and officers to act in the best interests of the corporation.[30]

Jenkins does not dispute whether corporate officers and directors owe a general fiduciary duty to their corporation under Kansas law. Rather, Jenkins argues that general fiduciary duty

---

[25] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[26] *In re Sweeney*, 341 B.R. 35, 40 (B.A.P. 10th Cir. 2006).

[27] *Id.*

[28] 11 U.S.C. § 523(a)(4).

[29] *In re Karr*, 442 B.R. 785, 801 (Bankr. D. Kan. 2011).

[30] *See, e.g., Becker v. Knoll*, 239 P.3d 830, 834 (Kan. 2010).

under state law is insufficient to establish fiduciary capacity under § 523(a)(4). Indeed, "[t]he general definition of fiduciary—a relationship involving confidence, trust and good faith—has been found to be too broad in the dischargeability context."[31] "[T]he mere fact that state law places two parties in a relationship that may have some of the characteristics of a fiduciary relationship does not necessarily mean that the relationship is a fiduciary relationship under 11 U.S.C. § 523(a)(4), which requires the existence of express or technical trust."[32] Accordingly, while the Bankruptcy Order points to numerous cases holding that officers and directors are fiduciaries of their corporations under Kansas law, those cases do nothing to unilaterally establish fiduciary capacity under § 523(a)(4).

The Tenth Circuit has "limited the term 'fiduciary capacity,' as it is used in the statute, to include only those types of relationships arising out of a pre-existing express or technical trust and not those which the law implies from a contract."[33] "The fact that the [d]ebtor may have owed some sort of general fiduciary duty to his corporation . . . is insufficient to establish the type of fiduciary duty that is required in the Tenth Circuit for dischargeability issues under § 523(a)(4)."[34] Courts in this circuit have found numerous general fiduciary relationships insufficient to establish "fiduciary capacity" under § 523(a)(4) in the absence of an express or technical trust: attorney and client,[35] corporate director and minority stockholder,[36] and

---

[31] *In re Goseland*, 114 B.R. 263, 268 (D. Kan. 1990) (citing *In re Angelle,* 610 F.2d 1335, 1338–39 (5th Cir. 1980)).

[32] 4 Collier on Bankruptcy, ¶ 523.10(1)(d) (Resnick & Sommer, eds., 15th ed. 2004) (citing *In re Regan*, 477 F.3d 1209 (10th Cir. 2007)).

[33] *Id.* (citing *In re Romero,* 535 F.2d 618, 621 (10th Cir.1976)); *see also, In re Young*, 91 F.3d 1367, 1371-73 (10th Cir. 1996) (holding that an attorney-client relationship is alone insufficient to demonstrate fiduciary capacity in the absence of an express or technical trust); *In re Seay*, 215 B.R. 780, 785-87 (B.A.P. 10th Cir. 1997); *In re Storie*, 216 B.R. 283, 286-90 (B.A.P. 10th Cir. 1997).

[34] *In re Utterback*, 2004 WL 2357761, *7 (Bankr. D. Kan. Mar. 3, 2004).

partnership.[37]  More specifically, courts have applied the Tenth Circuit rule to find that a corporate officer and director lacks fiduciary capacity under § 523(a)(4) when his corporation failed to establish an express or technical trust.[38]

In this case, the Bankruptcy Order recognized the Tenth Circuit rule that fiduciary capacity under § 523(a)(4) requires an express or technical trust, but held that the trust requirement does not apply when the subject relationship involves a corporation and its officers. In support of this proposition, the bankruptcy court and IBD relied heavily upon this district's bankruptcy opinion, *In re Karr*.[39]  In *Karr*, the District Court of Johnson County, Kansas, entered a final judgment against John William Karr ("Karr") for committing fraud while acting as a corporate director and officer.[40]  When Karr subsequently sought Chapter 7 bankruptcy protection, the bankruptcy trustee initiated an adversary action and filed a motion for summary judgment, alleging that the state-court judgment was non-dischargeable under § 523(a)(4).[41]  The bankruptcy court granted the trustee's motion for summary judgment and expressly "reject[ed] Karr's further argument that a § 523(a)(4) fiduciary relationship exists only when there is an express or technical trust . . . ."[42]

---

[35] *Young*, 91 F.3d at 1371-73.

[36] *In re Stevens*, 2007 WL 412824, **3-4 (Bankr. D. Kan. Feb. 1, 2007) (citing *In re Steele*, 292 B.R. 422 (Bankr. D. Colo. 2003).

[37] *In re Hatley*, 227 B.R. 757, 760-61 (B.A.P. 10th Cir. 1998) (partners); *Seay*, 215 B.R. at 785-87.

[38] *In re Green*, 386 B.R. 865, 870-71 (Bankr. D.N.M. 2008).

[39] 442 B.R. 785 (2011).

[40] *Karr*, 442 B.R. at 790.

[41] *Id.* at 804.

[42] *Id.* at 802.

The *Karr* opinion cites to non-binding and generic treatise materials for the propositions that "for purposes of § 523(a)(4), the relationship of a corporate officer to the corporation commonly imposes a fiduciary relationship,"[43] and the "[n]ondischargeable liability of corporate officers to the corporation . . . is well established."[44] These statements stand in stark contrast to the Tenth Circuit's plain holdings that affirmatively require evidence of an express or technical trust. In that respect, *Karr* misstates the Tenth Circuit rule that universally requires evidence of an express or technical trust in order to establish fiduciary capacity under § 523(a)(4).

*Karr* and its progeny, particularly *In re Markley*,[45] also carve out an exception to the Tenth Circuit rule. *Karr* and *Markley* held that the "rule requiring an express or technical trust does not apply when a corporation, rather than a corporate creditor or individual shareholder, objects to the discharge of a corporate officer's debt to it."[46] To support this proposition, those decisions cited a footnote in *In re Cowley*,[47] which does not support the proposed exception.[48] Further, neither of those decisions provide any rationale for distinguishing a corporate officer or director's relationship with a corporation from his relationship with corporate creditors or shareholders.

---

[43] *Id.* at 801-03 (citing Leah A. Kahl and Peter C. Ismay, *Exceptions to Discharge for Fiduciary Fraud, Larceny, and Embezzlement*, 7 J. Bankr. L. & Prac. 119, 122 (1998)).

[44] *Id.* at 801 (citing 3 Norton Bankr. L. & Prac. ¶ 57:27 at p. 57–80 (3d ed., Thompson Reuters 2010)).

[45] 460 B.R. 793 (Bankr. D. Kan. 2011).

[46] *Karr*, 442 B.R. at 802-03 (distinguishing a corporate officer's relationship to a corporation from such officer's relationship to minority shareholders or corporate creditors); *See In re Markley*, 460 B.R. 793, 799 (Bankr. D. Kan. 2011) (citing *Karr*, 442 B.R. at 802-03).

[47] 35 B.R. 526 (Bankr. D. Kan. 1983).

[48] In support of its proposition creating an exception to the Tenth Circuit rule, the *Karr* court cited *In re Cowley*, 35 B.R. at 529, n. 1. That footnote provides, "A corporate officer may not be a fiduciary of the corporation's creditors absent a statutory, technical or express trust." *In re Cowley*, 35 B.R. at 529, n. 1. (citing *Romero*, 535 F.2d at 618). Obviously, this footnote contradicts, and does not support, the *Karr* court's proposed exception.

Since *Karr* and *Markley* were decided, this district's Chief Bankruptcy Judge, Robert E. Nugent, issued an opinion expressly recognizing that the proposed corporate plaintiff exception stands in contrast with the Tenth Circuit rule requiring an express or technical trust.[49] Because the Court finds no support for the proposed exception to the general Tenth Circuit rule, the Court declines to follow *Karr* and its progeny by allowing such an exception here. The Court therefore finds that the bankruptcy court in this case erred in applying the exception.

### 2. IBD Failed to Demonstrate the Existence of an Express or Technical Trust

The relationship between Jenkins and IBD is subject to the Tenth Circuit rule, which requires an express or technical trust to establish fiduciary capacity under § 523(a)(4). "Under Kansas law, the elements necessary to create an express trust are: (1) an explicit declaration and intention to create a trust; (2) the transfer of lawful and definite property made by a person capable of making transfer thereof; and (3) a requirement to hold the property as trustee for the benefit of a *cestui que trust* with directions as to the manner in which the trust funds are to be applied."[50] IBD does not allege that the parties entered into a formal or express trust agreement, but instead argues that Jenkins's obligations arose by virtue of his status as an officer and director. However, the Kansas Supreme Court has held that the relationship between a corporation and its officers or directors does not give rise to an express trust.[51] Consequently, any trust relationship between Jenkins and IBD must be technical in nature.

---

[49] *In re Bratt*, 2013 WL 1337259, *9 (Bankr. D. Kan. Mar. 28, 2013).

[50] *In re Foy*, 2010 WL 2584193, *3 (Bankr. D. Kan. June 21, 2010) (citing *Jennings v. Jennings*, 211 Kan. 515, Syl. ¶ 4, 507 P.2d 241 (1973)).

[51] *Guilfoyle v. Brown*, 88 P.2d 1082, 1085 (Kan. 1939) ("Even if the relation between a corporation and its officers is that of trustee and cestui que trust, the trust is not an 'express' trust . . . ."); *Miami Ocean View Co. v. Phillips*, 19 P.2d 690, 692 (Kan. 1933).

A technical trust differs from an express trust in that the intention of the parties is not relevant,[52] and the parties' fiduciary obligations are imposed by law, not implied by law.[53] Technical trusts may arise under common law or statute.[54] With regard to the common law, numerous Kansas cases contemplate a fiduciary relationship between a corporation and its officers or directors.[55] The question, however, is whether Kansas law merely imposes a general fiduciary duty of confidence and good faith or whether such duty gives rise to a common-law technical trust for the purposes of § 523(a)(4).[56] While several cases refer to corporate officers and directors as "trustees,"[57] this conclusion "is rhetorically sound, but technically inexact."[58] "It is a statement often found in opinions, but is true only to a limited extent."[59] Corporate officers and directors "more nearly represent the managing partners in a business firm than a *technical trustee*. At most, they are *implied trustees* . . . ."[60] Because the fiduciary obligations of corporate officers and directors is implied by law and not imposed by law, the Court finds that Jenkins's status as an officer and director did not give rise to a common-law technical trust.

The Court must therefore determine whether any statutory provision gave rise to a technical trust between the parties. To demonstrate a technical trust sufficient to invoke §

---

[52] *Romero*, 535 F.2d at 621–22; *Steele*, 292 B.R. at 427 (citing *In re Turner*, 134 B.R. 646, 649 (Bankr. N.D. Okla. 1991)).

[53] *Steele*, 292 B.R. at 427-28 (citing *Romero*, 535 F.2d at 621-22).

[54] *Id.*

[55] *See, e.g., Becker*, 239 P.3d at 834.

[56] *See Steele*, 292 B.R. at 427 (distinguishing general fiduciary duty from a technical trust).

[57] *See, e.g., Stewart v. Harris*, 77 P. 277, 279-80 (Kan. 1904).

[58] *Guilfoyle*, 88 P.2d at 1085.

[59] *Id.*

[60] *Id.* (emphasis added).

523(a)(4), IBD must establish three elements. "Those elements are: (1) that the trust res must be defined by the statute; (2) that the statute must spell out the fiduciary duty; and (3) that the statute must impose a trust on funds prior to the act creating the debt."[61] IBD does not point to any authority in the Kansas corporation statutes, and the Court finds no such provision, that imposes a fiduciary duty on officers or directors of a corporation that rises to the level of a technical trust under § 523(a)(4). Indeed, federal courts have evaluated the corporation statutes of numerous states and held those provisions insufficient to create a technical trust necessary to establish non-dischargeability under § 523(a)(4).[62] Accordingly, the Court finds that Jenkins was not subject to a statutory technical trust. Because IBD has failed to demonstrate an express or technical trust, the Court finds that the bankruptcy court erred in holding that Jenkins's general fiduciary duties gave rise to fiduciary capacity under § 523(a)(4). Further, because an issue fact remains regarding whether such an express or technical trust existed for the purposes of dischargeability, the Court remands this case to the bankruptcy court for determination.[63]

## B. The Bankruptcy Court Erred in Applying the Doctrine of Collateral Estoppel

Jenkins asserts that the bankruptcy court erred in applying the doctrine of collateral estoppel to hold that the state-court findings sufficiently supported the exceptions to discharge under § 523(a)(4) and (a)(6). As a matter of law, collateral estoppel may apply in § 523 actions

---

[61] *Medved v. Novak (In re Novak)*, 97 B.R. 47, 59 (Bankr. D. Kan. 1987).

[62] *Steele*, 292 B.R. at 428-30; *In re Tway*, 161 B.R. 274, 281 (Bankr. W.D. Okla. 1993) ("[T]he Oklahoma General Corporation Act does not impose any express statutory fiduciary duties on directors of a corporation."); *In re Sadler*, 2007 WL 4199598, *2 n. 1 (Bankr. N.D. Fla. Nov. 26, 2007) ("[T]here is no Florida statute that establishes a trust to meet the bankruptcy's standard of fiduciary capacity for a corporate director or officer, and there is no express trust between the parties that is evidenced in the record."); *In re Hill*, 390 B.R. 407, 412 (B.A.P. 10th Cir. 2008) (holding that the Oklahoma corporation code "does not sufficiently and explicitly create a trust or define a trust res that would satisfy the Tenth Circuit's statutory trust requirements.").

[63] *See In re Green*, 281 B.R. 699, 705 (D. Kan. 2002) (remanding case to bankruptcy court for factual determination).

to determine the dischargeability of a debt.[64]  To determine the applicability and effect of collateral estoppel, federal courts look to the law of the state in which judgment was rendered.[65]  Under Kansas law, a party is collaterally estopped from re-litigating facts that have been comprehensively litigated, finally adjudicated, and resulted in a state-court judgment.[66]

Collateral estoppel applies when: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[67]  If a state court adjudicates a question and determines factual issues using standards identical to those of §523, collateral estoppel operates to preclude relitigation of those issues in the bankruptcy court.[68]  The party seeking to invoke collateral estoppel must show that the same operative facts formed the basis for both the state-law action and the dischargeability complaint.[69]

### 1. IBD's Judgment for Breach of Fiduciary Duty

Jenkins does not dispute that he was a party to the state-court litigation, that he had a full and fair opportunity to litigate issues before the state courts, or that the state courts entered and affirmed a final judgment on IBD's claim for breach of fiduciary duty.  Rather, Jenkins disputes the identity of issues presented to the state and bankruptcy courts.  More specifically, Jenkins

---

[64] *Grogan v. Garner*, 498 U.S. 279, 284 (1991).

[65] *Marrese v. American Acad. Of Orthopaedic Surgeons*, 470 U.S. 373, 379-80 (1985).
[66] *KPERS v. Reimer & Koger Assocs., Inc.*, 941 P.2d 1321, 1344 (Kan. 1997).

[67] *In re Klippel*, 183 B.R. 252, 258 (Bankr. D. Kan. 1995) (citing *In re Lombard*, 739 F.2d 499, 502 (10th Cir. 1984)); *Williams v. Evans*, 552 P.2d 876, 878 (Kan. 1976).

[68] *Klippel*, 183 B.R. at 259 (citing *Brown v. Felsen*, 442 U.S. 127, 139 n. 10 (1979)).

[69] *In re McCarthy*, 350 B.R. 820, 834 (Bankr. N.D. Ind. 2006).

asserts that the state-court jury verdict and judgment contemplated his general "fiduciary duty" under state law, but failed to determine whether Jenkins's relationship to IBD constituted "fiduciary capacity" required to establish the discharge exception under § 523(a)(4). The Court agrees.

Section 523(a)(4) excepts from discharge "any debt . . . for fraud or defalcation while acting in a *fiduciary capacity* . . . ."[70] The bankruptcy code does not define "fiduciary capacity," but its definition is a matter of federal, not state, law.[71] As stated above, the Tenth Circuit requires the existence of an express or technical trust to establish fiduciary capacity under § 523(a)(4).[72] Not every fiduciary relationship recognized under state law rises to the level of fiduciary capacity for the purpose of dischargeability.[73]

In this case, the state-court judgment for breach of fiduciary duty rests upon the following instruction that the trial court issued to the jury:

> The Plaintiff contends that a fiduciary relationship existed between IBD, Inc., and Scott Jenkins, the Defendant. The term "fiduciary relationship" refers to any relationship of blood, business, friendship or association in which one of the parties places special trust and confidence in the other. It exists in cases where there has been a special confidence placed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one placing the confidence.[74]

---

[70] 11 U.S.C. § 523(a)(4) (emphasis added).

[71] *Klippel*, 183 B.R. at 259.

[72] *Young*, 91 F.3d at 1371-73.

[73] *See id.*

[74] Jury Instruction No. 17, Doc. 3-3, at 77.

This "general definition of fiduciary—a relationship involving confidence, trust and good faith—is too broad in the dischargeability context."[75] The record does not reveal any specific instruction or evidence directly related to the existence of an express or technical trust. Because the standards and evidence related to IBD's state-law claim for breach of fiduciary duty differ from the narrower standards and evidence necessary to establish an express or technical trust required to establish fiduciary capacity under § 523(a)(4), the Court finds that the issue previously decided is not identical to the one presently before the Court. For this reason, the Court finds that the bankruptcy court erred in applying collateral estoppel and remands the case to the bankruptcy court for determination regarding Jenkins's fiduciary capacity.

### 2. IBD's Judgment for Punitive Damages

Jenkins next argues that the bankruptcy court erred in applying collateral estoppel to preclude litigation concerning whether he caused "willful and malicious injury" to IBD under § 523(a)(6). Section 523(a)(6) excepts from discharge "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."[76] "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."[77] "The focus of the 'malicious' inquiry is on the debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor, not on abstract and perhaps moralistic notions of the 'wrongfulness' of the debtor's act."[78] "Under § 523(a)(6), the debtor's malicious intent can

---

[75] *Klippel*, 183 B.R. at 259 (citing *In re Weiner,* 95 B.R. 204, 206 (Bankr.D.Kan.1989)).

[76] 11 U.S.C. § 523(a)(6).

[77] *Kawaahau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original); *Farmers Ins. Group v. Compos (In re Compos)*, 768 F.2d 1155, 1158 (10th Cir.1985) (holding that § 523(a)(6) "does not except from discharge intentional acts which cause injury; it requires instead an intentional or deliberate injury").

be shown in two ways."[79] First, [i]n the rare instances in which there is direct evidence that the debtor's conduct was taken with the specific intent to harm the creditor, the malice requirement is easily established."[80] Second, and "[m]ore commonly, however, malicious intent must be demonstrated by evidence that the debtor had knowledge of the creditor's rights and that, with that knowledge, proceeded to take action in violation of those rights."[81] To establish whether collateral estoppel applies in an adversary action regarding dischargeability, courts look to the jury instructions given in prior litigation.[82]

In this case, the jury found that punitive damages were appropriate upon the following instruction:

> In this case the plaintiff claims that defendant acted in a willful, fraudulent, or in a malicious manner toward Plaintiff. If you award the plaintiff actual damages, then you may consider whether punitive damages should be allowed. Punitive damages may be allowed in the jury's discretion to punish a defendant and to deter others from like conduct.
>         . . . .
> If you find the defendant did one or more of the acts claimed by the plaintiff you should then determine whether clear and convincing evidence has been presented that the defendant acted in a willful, fraudulent, or in a malicious manner. If you determine punitive damages should be allowed, your finding should be entered in the verdict form. . . . [83]

The trial court also issued jury instructions defining the words, "willful," "fraudulent," and "malice." "An act performed with a designed purpose or intent on the part of a person to do

---

[78] *In re Reid*, 149 B.R. 669, 672 (Bankr. D. Kan. 1992) (quoting *In re Posta*, 866 F.2d 364-367 (10th Cir. 1989)).

[79] *Posta*, 866 F.2d at 367.

[80] *Id.*

[81] *Id.*

[82] *See In re Duvall*, 2009 WL 3367092, *5 (Bankr. D. Colo. Oct. 9, 2009) (reviewing jury instructions to determine applicability of collateral estoppel in an adversary action).

[83] Jury Instruction No. 18, Doc. 3-3, at 78.

wrong or to cause an injury to another is a willful act."[84]  "An act performed to intentionally suppress or conceal a material fact for the purpose of inducing another in reliance upon it is a fraudulent act."[85]  "Malice is a state of mind characterized by an intent to do a harmful act without a reasonable justification or excuse."[86]  Upon these instructions, the jury found that IBD was entitled to punitive damages.  To arrive at this finding, the jury must have implicitly found that clear and convincing evidence showed that Jenkins "acted in a willful, fraudulent, or in a malicious manner."[87]

Jenkins argues that collateral estoppel is inapplicable because the disjunctive jury instruction requiring "willful, fraudulent, *or* malicious"[88] conduct meaningfully differs from the conjunctive finding of "willful *and* malicious"[89] conduct necessary under § 523(a)(6). According to Jenkins, the disjunctive posture of the instruction permitted the jury to award punitive damages without finding both willful and malicious conduct.  The Court agrees. Indeed, the trial court's jury instructions define the words "willful" and "malice" to require intent to cause harm or injury, the same standard required to find "willful and malicious" conduct under Section 523(a)(6).  However, the trial court's disjunctive jury instruction also permitted the jury to award punitive damages upon a finding of fraudulent conduct alone.  The jury instruction defining "fraudulent" conduct does not require intent to cause harm or injury, but only requires intent to suppress or conceal a material fact.  Therefore, the disjunctive nature of the jury

---

[84] Jury Instruction No. 20, Doc. 3-3, at 80.

[85] Jury Instruction No. 19, Doc. 3-3, at 79.

[86] Jury Instruction No. 21, Doc. 3-3, at 81.

[87] Jury Instruction No. 18, Doc. 3-3, at 78.

[88] Jury Instruction No. 18, Doc. 3-3, at 78 (emphasis added).

[89] 11 U.S.C. § 523(a)(6) (emphasis added).

instruction permitted the jury to award damages without finding the injurious intent necessary to support "willful and malicious" conduct under § 523(a)(6).

Numerous courts have refused to apply collateral estoppel to a state-court judgment based upon a disjunctive jury instruction including one or more alternatives that deviate from the standards required under Section 523(a)(6).[90] In this situation, the disjunctive language of jury instructions or state-court judgments is not trivial; it "is fatally problematic."[91] Because the Court cannot conclusively conclude that the jury verdict and state-court judgments contemplated standards identical to those required under § 523(a)(6), application of collateral estoppel is inappropriate. Accordingly, the Court finds that the bankruptcy court erred in applying collateral estoppel and remands this case to the bankruptcy court for determination regarding to Jenkins's alleged conduct was "willful and malicious" for the purpose of dischargeability.

## C. Compliance with Local Bankruptcy Rule 7056.1

Finally, Jenkins argues that the bankruptcy court erred in considering and granting IBD's motion for summary judgment because its motion was not supported by factual materials required under Local Bankruptcy Rule 7056.1. Because the Court reverses the bankruptcy court's order granting IBD's motion for summary judgment, this matter is rendered moot and the Court need not reach the issue.

---

[90] *In re Martin*, 130 B.R. 930, 946 (Bankr. N.D. Ill. 1991) (refusing to apply collateral estoppel because "the jury instructions allowed the jury to award punitive damages even in the absence of a finding of malice or willfulness on the part of Debtor."); *In re Schwenn*, 44 B.R. 746, 749 (Bankr. E.D. Wis. 1984); *In re Gray*, 2011 WL 4503078, *10 (B.A.P. 9th Cir. July 7, 2011) ("[T]he disjunctive language in the Jury Instructions and the State Court Judgment is fatally problematic."); *In re Loader*, 417 B.R. 604, 612 (Bankr. D. Idaho 2009); *In re Pierron*, 448 B.R. 228, 237 (Bankr. S.D. Ohio 2011); *In re Bachinski*, 393 B.R. 522, 534 (Bankr. S.D. Ohio 2008) ("A judgment does not have issue-preclusive effect if it makes several findings of fact or conclusions of law in the disjunctive and at least one of the alternative findings is insufficient to support a nondischargeability judgment."); *In re Eastburg*, 440 B.R. 864, 876 (Bankr. D.N.M. 2010)

[91] *In re Gray*, 2011 WL 4503078, *10 (B.A.P. 9th Cir. July 7, 2011).

**IT IS ACCORDINGLY ORDERED** that the bankruptcy court's Memorandum Opinion and Order Granting Plaintiff's Motion for Summary Judgment and Denying Defendant's Motion for Summary Judgment (Doc. 1-1) and corresponding Judgment (Doc. 1-3) are **REVERSED AND REMANDED**.

**IT IS SO ORDERED**.

Dated this 11th day of April, 2013.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE